IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARMANDEEP SINGH GROVER**,<br>4702 Davis Ave. S.<br>Apt. #AA305<br>Renton, WA 98055<br><br>      Plaintiff,<br><br>   v.<br><br>**ASHTON B. CARTER**, in his official capacity as Secretary of Defense<br>Office of the Secretary of Defense<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000<br><br>**JOHN M. MCHUGH**, in his official capacity as Secretary of the Army<br>101 Army Pentagon<br>Washington, D.C. 20310-0101<br><br>      Defendants. | Civil Action No. |

## COMPLAINT

1.   This action is brought to redress Defendants' failure to accommodate Plaintiff Harmandeep Singh Grover's exercise of religion, in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq*.

## INTRODUCTION

2.   Plaintiff was recruited by the United States Army ("Army") under the Military Accessions Vital to the National Interest ("MAVNI") program for his language and cultural skills. Plaintiff met the qualifications of the MAVNI program, enlisted in the Army, and was scheduled to deploy to basic training in October 2013.

-2-

3. Plaintiff is an observant Sikh and native Punjabi speaker. He observes the tenets of the Sikh faith, including maintaining unshorn hair, wearing a beard, and wearing a turban.

4. Since 2007, the Army has granted over 100,000 exceptions, waivers, and accommodations to its grooming policies regarding facial hair. These include religious accommodations permitting at least six soldiers to maintain their beards, including three Sikhs, who were also permitted to keep their unshorn hair under their turbans.

5. Plaintiff requested a similar religious accommodation. The Army, however, denied Plaintiff's request, without providing any explanation as to what distinguished him from previously accommodated Sikhs. Because the Army denied Plaintiff's Request for Religious Accommodation, he was forced to separate from the Army and unable to deploy to basic training. The Army's denial of the religious accommodation substantially burdens Plaintiff's exercise of his religion, and neither furthers a compelling government interest nor is the least restrictive means to further the government's interest.

**PARTIES**

6. Plaintiff Harmandeep Singh Grover is an Indian national legally residing in the United States.

7. Defendant Ashton B. Carter is the Secretary of Defense for the United States. He is sued in his official capacity.

8. Defendant John M. McHugh is the Secretary of the United States Army. He is sued in his official capacity.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361 because Plaintiff asserts claims under a federal statute against employees of the United States.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e). The Secretary of Defense and Secretary of the Army reside in this district. 28 U.S.C. § 1391(e) (1) (a). Both the Secretary of Defense and the Secretary of the Army perform a significant amount of their official duties in the District of Columbia.

## FACTUAL BACKGROUND

### Plaintiff's Efforts to Join the Army

11. Plaintiff has been an observant Sikh his entire life. Plaintiff's Sikh faith as outlined in the Sikh Code of Conduct, Rehat Maryada, requires him to maintain unshorn hair, to wear a beard, and to wear a turban.

12. Plaintiff's hair is unshorn, he wears a beard, and wears a turban. He has never in his life shaved or cut his hair.

13. Sikhs have a long history of honorable military service and have achieved the highest levels of military distinction while observing the tenets of the Sikh faith. Sikhs served with allied forces during both world wars and currently serve in the militaries of India, Great Britain, and Canada.

14. Plaintiff sought to serve in the Army to continue the proud tradition of Sikh military service and to become an American citizen.

15. In 2013, Plaintiff learned that he could be eligible to join the Army through the MAVNI program.

16. The MAVNI program is a recruiting program created in 2008 by then-Secretary of Defense Robert Gates pursuant to 10 U.S.C. § 504(b)(2), which allows the Secretary of Defense to authorize the enlistment of certain non-United States citizens and non-United States

permanent lawful residents in the United States military if the "Secretary determines that such enlistment is vital to the national interest."

17.     The MAVNI program recruits certain non-citizens with critical cultural and language skills in one of 44 strategic languages to enlist in the Army.  The program is currently active and scheduled to run through the end of Fiscal Year 2016.

18.     Punjabi is one of the languages for which the program is seeking recruits.  *See* Military Accessions Vital to the National Interest, GOARMY.com, http://www.goarmy.com/benefits/additional-incentives/mavni.html (last visited May 4, 2015).

19.     As a native Punjabi speaker, Plaintiff was and remains eligible to enlist under the MAVNI program.[1]

20.     Upon expressing his interest in enlisting, Plaintiff was referred to Sergeant First Class Tanisha Jacobs, Station Commander of the Olympia, Washington Recruiting Center.

21.     Plaintiff discussed his Sikh beliefs with Sergeant Jacobs, who told him that soldiers are required to comply with Army hair and grooming standards, as set forth in United States Department of Army Regulation ("AR") 670-1.

22.     Army Regulation 670-1 requires the hair on the top of a male's head to be "neatly groomed" and that "[t]he length and bulk of the hair may not be excessive and must present a neat and conservative appearance."  AR 670-1(3-2(a)(2)), Wear and Appearance of Army Uniforms and Insignia, 15 September 2014.  The regulation also states that "Males will keep their face clean-shaven when in uniform, or in civilian clothes on duty . . . beards are not authorized."  AR 670-1(3-2(a)(2)(b)).

---

[1] Plaintiff is in the United States on an F-1 visa, a permissible non-immigrant visa category for enlistment through MAVNI.

23.     Notwithstanding these regulations, soldiers are permitted to wear religious apparel, such as a turban, unless the item is determined not to be "neat and conservative" or it interferes with the soldier's military duties.  10 U.S.C. § 774.  *See also* AR 600-20 (5-6(h)(4))("Religious jewelry, apparel, or articles (hereafter referred to as religious items) may be worn while in uniform if they are 'neat and conservative.'").

24.     Sergeant First Class Jacobs informed Plaintiff that if he intended to observe the tenets of the Sikh faith during his service he could request a religious accommodation, but that he should wait to do so until after he had completed the other enlistment requirements.

25.     Plaintiff then commenced the process of enlisting in the Army.  Plaintiff passed the required language, aptitude, and physical tests, meeting all necessary requirements to enlist in the Army.

26.     On June 19, 2013, Plaintiff enlisted in the Ready Reserve component of the Army as a MAVNI enlistee through the Delayed Entry/Enlistment Program ("DEP").

### Plaintiff's Request for Religious Accommodation

27.     In early June 2013, Sergeant Jacobs informed Plaintiff that he would need to write a letter on his own behalf to request a religious accommodation.  On June 4, 2013, Plaintiff submitted a Request for Religious Accommodation to the Army's Seattle Recruiting Battalion to enable him to serve in the Army and observe the tenets of the Sikh faith by keeping his hair and beard unshorn and wearing a turban.

28.     Plaintiff's Request for Religious Accommodation describes the spiritual significance of observing the tenets of the Sikh faith and explains that his Sikh religious beliefs and identity are "intricately tied" to his Punjabi language skills and cultural competency with the customs and

mores of South Asia, which are deemed vital to the national interest and serve as the basis for his recruitment through the MAVNI program.

29.     In correspondence with other Army officials regarding Plaintiff's Request for Religious Accommodation, SFC Jacobs acknowledged that "[t]his type of accommodation has been done before," and stated: "In my opinion if he were to get this approval it will be a positive thing for the BN [Battalion] and the Army."

30.     On June 14, 2013, Sergeant Jacobs forwarded email correspondence to Plaintiff from First Sergeant (1SG) Todd Crofoot rejecting Plaintiff's Request for Religious Accommodation. First Sergeant Crofoot pointed to USAREC Message 13-111 as the basis for the denial.[2]  That message states, in part, that all applicants for enlistment must comply with the hair and grooming policies, and that "[e]xceptions to policy for hair and grooming practices or accommodations related to grooming based on religious practices will not be entertained or granted."

31.     USAREC Message 13-111 is at odds with the Army's requirement to "approve requests for accommodation of religious practices unless accommodation will have an adverse impact on unit readiness, individual readiness, unit cohesion, morale, discipline, safety, and/or health." AR 600-20(5-6)(a).  Army Regulations specifically permits the wearing of religious headgear while in uniform if it is (i) subdued in color; (ii) can be completely covered by standard military headgear; (iii) bears no writing or symbols; and (iv) does not interfere with the wear or proper functioning of protective clothing or equipment.  AR 600-20(5-6)(g)(1-4).

32.     On July 17, 2013, SFC Jacobs initiated a second review of Plaintiff's Request for Religious Accommodation by submitting the request through Army channels for a determination by the Office of the Deputy Chief of Staff for Personnel, G-1.

---

[2] Message 13-111, 31 March 2013, United States Army Recruiting Command, Subject: Wear and Appearance of Army Uniforms and Grooming Standards ("USAREC Message 13-111")

33.     Consistent with Army regulations for consideration of Plaintiff's Request for Religious Accommodation, Chaplain (CPT), Richard Hartenberg, Deputy Brigade Chaplain, 6th Recruiting Brigade, United States Army, interviewed Plaintiff on July 25, 2013 to assess whether an accommodation would be proper.

34.     Like SFC Jacobs, Chaplain (CPT) Hartenberg recommended that Plaintiff's request be approved.  In a memorandum he submitted to the G-1, through Commander, United States Army Recruiting Command, he concluded that Plaintiff "is sincere in his practice of the Sikh religion. I recommend Approval of this religious accommodation for him."

35.     On August 26, 2013, United States Senator Patty Murray (D-WA) wrote a letter to Defendant McHugh and Defendant Carter's predecessor on behalf of Plaintiff asking that he be allowed to serve without abandoning his religious beliefs.  Senator Murray noted that Plaintiff was "specifically recruited because he possesses cultural and linguistic skills considered to be vital to our national interest" that are "intricately tied" to his Sikh religious beliefs and identity. Senator Murray further stated that the Army's prior religious accommodation of a Sikh army officer established "precedence [sic] that Plaintiff's articles of faith can be balanced with military necessity, unit cohesion, and uniformity."

36.     On August 29, 2013, counsel for Plaintiff submitted supplemental materials in support of his Request for Religious Accommodation to Colonel Collin J. Fortier, Brigade Commander, 6th Recruiting Brigade, United States Army Recruiting Command.  The supplemental materials included:

   A.  A copy of the Sikh Rehat Maryada, the official Sikh Code of Conduct and Conventions, which provides guidelines on the requirements of Sikh religious practices, including unshorn hair.

    B.  A letter from Colonel G.B. Singh, United States Army (Retired), a devout Sikh and 28-year Army veteran,[3] who stated "At no time during my 28 years [sic] career did my Sikh articles of faith interfere with my duty as a United States Army officer.  I was able to successfully adapt my Sikh observance to my military service without conflict."  Moreover, Colonel Singh wrote "during drills involving gas, I was able to wear a gas mask and ensure a proper seal by placing the mask on the skin behind my facial hairline, thereby enabling me to train in gas chambers for extended periods of time."

    C.  A letter from the Khalsa Gurmat School, a community religious school affiliated with Plaintiff's Gurudwara (Sikh Temple), attesting to his religious practice and communal involvement.

    D.  Letters from other members of the Sikh Community sharing personal knowledge of Plaintiff's sincere commitment to his Sikh faith.

37.    On October 9, 2013, United States Representative Judy Chu (D-CA) and United States Representative David G. Valadao (R-CA), co-chairs of the American Sikh Congressional Caucus, wrote a letter to Defendant Carter's predecessor and Defendant McHugh on behalf of Plaintiff stating that Plaintiff was "specifically recruited in large part due to his cultural and linguistic skills, which are deemed vital to our national interest," and that "his Sikh religious identity is naturally and inextricably linked to these same vital skills."

38.    On October 9, 2013, United States Representative Joseph Crowley (D-NY), wrote a letter to Defendant McHugh on behalf of Plaintiff asking that Plaintiff be allowed to serve as a United

---

[3] Colonel Singh served in the Army from 1979 to 2007.  When Colonel Singh joined the Army, Sikhs were permitted to serve while maintaining their Articles of Faith under an exemption to Army grooming regulations.  That exemption was eliminated, but Sikhs who were on active duty at the time, including Colonel Singh, were allowed to continue maintaining their Articles of Faith.

States Army soldier without abandoning his religious beliefs. Representative Crowley noted that currently serving Sikh soldiers who had previously been granted accommodations demonstrated that "Mr. Grover's Sikh articles of faith can be balanced with military necessity, unit cohesion and uniformity."

39.     Plaintiff was scheduled to enlist in the regular component of the Army as a Financial Management Technician and deploy from the Seattle, Washington Military Entrance Processing Station to basic training at Fort Jackson, South Carolina on October 28, 2013.

**Denial of Plaintiff's Request for Religious Accommodation**

40.     Under Army policy, requests for accommodation of a religious practice will be approved or disapproved by the unit commander. "If a commander determines a partial or complete denial is appropriate, he/she will prepare a memorandum specifying the basis for denial and provide a copy of the memorandum to the Soldier." AR 600-20(5-6)(g).

41.     Requests for religious accommodation of wear and appearance of uniforms, personal appearance, and grooming practices may only be approved or disapproved by the Secretary of the Army or his designee, the Army's Deputy Chief of Staff for Personnel, G-1. AR 600-20(5-6)(i); Department of Defense Directive 1300.17(4)(f).

42.     On October 23, 2013, the Army's then Deputy Chief of Staff, G-1, Lieutenant General Howard B. Bromberg, denied Plaintiff's Request for Religious Accommodation. Lieutenant General Bromberg provided no explanation for the denial other than the following conclusory statement: "This decision is based solely on the facts and circumstances of your case, as balanced against the potential impact of accommodation on 'military necessity.'"

43.     Lieutenant General Bromberg did not explain the factors he considered in denying Plaintiff's request.  Nor did he explain how Plaintiff's circumstances differed from other currently serving Sikhs who had been granted religious accommodations by the Army.

44.     Lieutenant General Bromberg's rejection memorandum failed to establish that the denial of Plaintiff's Request for Religious Accommodation furthered a compelling government interest or was the least restrictive means of furthering the government's interest.

45.     The memorandum informed Plaintiff that because his Request for Religious Accommodation was denied, he was entitled to request separation from the Army pursuant to Army Regulation 635-200, which permits separation from the Army based on a conflict between one's religious beliefs and military requirements.

46.     As a result of the denial of Plaintiff's Request for Religious Accommodation, he was forced to separate from the Army Reserve on October 24, 2013 pursuant to Army Regulation 635-200.

47.     On December 8, 2014, Plaintiff's counsel wrote to Defendant McHugh and Defendant Carter's predecessor regarding the Army's denial of Plaintiff's Request for Religious Accommodation and consequent violation of Plaintiff's rights under the Religious Freedom Restoration Act.  Plaintiff's counsel requested the approval of Plaintiff's Request for Religious Accommodation that would permit Plaintiff to enlist and serve in the Army while observing the tenets of his Sikh faith.

48.     On January 28, 2015, Lieutenant General James C. McConville, Deputy Chief of Staff, G-1, replying on behalf of Defendant McHugh and Defendant Carter's predecessor, denied the request, stating that Plaintiff's counsel's letter "does not present any new grounds or evidence for consideration of a second request for religious accommodation."

49.     But for the Army's insistence that Plaintiff violate his observance of the tenets of the Sikh faith, he would have served in the Army.

50.     Plaintiff remains ready, willing, and able to serve in the Army if he is granted an accommodation to observe the tenets of the Sikh faith.

### **The Army Has Approved Similar Requests for Accommodation**

51.     The Army has granted religious accommodations to Sikh soldiers—both officers and enlisted personnel—to serve while observing the tenets of their Sikh faith.  Their observance of the tenets of the Sikh faith has not impeded their military service.

52.     Corporal Simran Preet Singh Lamba received a religious accommodation to maintain a beard and unshorn hair and wear a turban in accordance with the Sikh faith on August 30, 2010.  He now serves on active duty.  Like Plaintiff, Corporal Lamba was recruited under the MAVNI program for cultural skills and fluency in Punjabi and Hindi.

53.     Major Kamaljeet Singh Kalsi received a religious accommodation to maintain a beard and unshorn hair and wear a turban in accordance with the Sikh faith on October 22, 2009.  Major Kalsi began service in the Army in June 2010.  He was deployed to Afghanistan in 2011 and was awarded the Bronze Star Medal in recognition of his service.

54.     Captain Tejdeep Singh Rattan received a religious accommodation to maintain a beard and unshorn hair and wear a turban in accordance with the Sikh faith on December 1, 2009.  He began his service in January 2010 and was deployed to Afghanistan during 2011.  For his service, Captain Rattan has been awarded the Army Commendation Medal and the NATO Medal.

55.     Upon information and belief, Major Kalsi, Captain Rattan, and Corporal Lamba were reissued religious accommodations in 2013 that would be valid for their full careers.

56. Major Kalsi, Captain Rattan, and Corporal Lamba have used standard-issue Army cloth to develop turbans that conform to Army uniform requirements. These soldiers have been commended for adhering to the Army uniform standards of neatness and conservativeness while observing the tenets of their Sikh faith.

57. Numerous other Sikh soldiers have served in the Army as both officers and enlisted personnel while observing the tenets of the Sikh faith, including: Colonel Gopal S. Khalsa, Colonel G.B. Singh, Colonel Arjinderpal Singh Sekhon, Major Parbhur Singh Brar, Sergeant Sevak Singh Kroesen, and Sergeant Kirnbir Singh Grewal. Upon information and belief, observance of the tenets of the Sikh faith has in no way impeded any of these soldiers' service in the Army.

58. Upon information and belief, allowing Sikhs to serve in the Army with unshorn hair and wearing a turban has not undermined troop morale and esprit de corps, or the military's need for uniformity, military readiness, unit cohesion, good order, discipline, health, and safety, on both the individual and unit levels.

59. Upon information and belief, the Army Research Institute, under directions from the G-1, conducted a case study of Corporal Lamba's Basic Combat Training and Advanced Individual Training, from September 2010 to April 2011, to examine the impact of Corporal Lamba's Religious Accommodation on his initial military training.

60. The researchers observed events during the two training periods and interviewed commanders, non-commissioned officers, instructors, and soldiers from Corporal Lamba's platoon. The researchers also interviewed Corporal Lamba as well as two Sikh officers who had previously undergone training (MAJ Kalsi and CPT Rattan).

61. The study's findings included the following:

- The Religious Accommodation did not seem to affect Corporal Lamba's attainment of Soldier skill/task proficiency.

- The Religious Accommodation had no significant impact on his own, or any other soldier's, health and safety.

- The Religious Accommodation did not have a significant impact on unit morale, cohesion, good order and discipline.

### The Army Routinely Grants Broad Exceptions to its Grooming Policy

62.     Upon information and belief, the Army has granted over 100,000 "shaving profiles" that exempt soldiers from the Army's grooming requirements.  These waivers are granted to soldiers whose skin is irritated by regular shaving, including soldiers who suffer from psuedofolliculitis barbae and acne keloidalis nuchae.  Soldiers granted the waiver are allowed to train and serve without shaving.

63.     Since 2007, the Army has granted over 55,000 temporary shaving exemptions for medical reasons.  It has granted at least 49,500 permanent shaving profiles.  In 2015 alone, the Army has granted more than 7,000 shaving profiles.

64.     Soldiers granted shaving profiles have been deployed abroad.  While deployed abroad, these soldiers continued to wear their beards.

65.     Upon information and belief, the Army has allowed and continues to allow Special Forces troops to serve with beards several inches long.

66.     Upon information and belief, the Army has also granted exceptions to its grooming regulations to permit soldiers of other faiths to maintain a beard.  In 2011, Lieutenant Menachem M. Stern, a Jewish rabbi, was granted a religious accommodation to maintain a beard while serving as a Chaplain in the Army.  In addition, an Army officer and orthopedic surgeon was

granted a religious accommodation to maintain a beard, in accordance with his Islamic faith, on December 1, 2009, and an Army officer and anesthesiology resident was granted a religious accommodation to maintain a beard, in accordance with his Islamic faith, on April 5, 2011.

67. Upon information and belief, the Army allows other forms of religious headwear, including yarmulkes for Jewish soldiers.

68. Despite a stated interest in uniform application of its grooming standards, the Army regularly grants thousands of exceptions ever year and has expanded the number of exceptions it grants to soldiers who do not comply with the grooming policy.

## COUNT I: VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. § 2000bb *et seq.*

69. Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

70. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq. ("RFRA"), provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates that the burden "is in furtherance of a compelling interest; and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1.

71. The protections afforded by RFRA apply to Plaintiff as a legal resident of the United States.

72. Plaintiff holds a sincere religious belief that he must maintain unshorn hair and beard, and wear a turban as a central tenet of his Sikh faith.

73. Defendants' refusal to provide Plaintiff a religious accommodation to the Army's grooming policy substantially burdened his exercise of religion by forcing him to choose

between violating his religious beliefs and serving in the Army, by which he would gain United States citizenship.

74. The Army's refusal to accommodate Plaintiff's exercise of religion is not in furtherance of a compelling government interest.  Indeed, the Army has previously granted religious accommodations to Sikhs enabling their service in the Army, including an enlisted soldier who was recruited by the Army through the same MAVNI program as Plaintiff.

75. In the alternative, the Army's refusal to accommodate Plaintiff's exercise of religion is not the least restrictive means of furthering a compelling government interest.

76. Army regulations permit accommodations for apparel, grooming, and grooming practices based on religious beliefs.  The Army repeatedly has made exceptions to its uniform and grooming policies, including accommodating Sikhs and other soldiers' exercise of religious beliefs.

77. Upon information and belief, allowing Sikh soldiers to observe the tenets of the Sikh faith has not compromised any elements of "military necessity" or mission success, including military readiness, unit cohesion, good order, discipline, health, and safety, on both the individual and unit levels.

78. By refusing to grant Plaintiff's Request for Religious Accommodation to permit him to serve in the Army while observing the tenets of the Sikh faith, Defendants violated Plaintiff's rights under the Religious Freedom Restoration Act.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

(a) Enter judgment for Plaintiff and against the Defendants;

(b) Enter a permanent injunction ordering Defendants to grant Plaintiff's Request for Religious Accommodation that would allow Plaintiff to enlist and serve in the Army while observing the tenets of his Sikh faith;

(c) Enter a declaratory judgment that the application of Army Regulation 670-1, Army Regulation 600-20, and Department of Defense Directive 1300.17 are unlawful as applied to Sikhs who maintain unshorn hair, wear a beard, and wear a turban in observance of the Sikh faith;

(d) Award the Plaintiff reasonable costs and attorneys' fees; and

(e) Grant such other and further relief deemed proper and appropriate by this Court.

Dated: May 7, 2015

Respectfully submitted,

s/ K. Lee Blalack, II
K. Lee Blalack, II (D.C. Bar No. 452372)
Scott Hammack (D.C. Bar No. 493269)
David J. Ribner (D.C. Bar No. 1015712)
O'MELVENY & MYERS LLP
1625 Eye St. N.W.
Washington, D.C. 20006
Tel: 202-383-5300
Fax: 202-383-5414
lblalack@omm.com
shammack@omm.com
dribner@omm.com

Manmeet Singh Mehendiratta
Anisha Singh
UNITED SIKHS
JAF POB 7203
New York, NY 10116
Tel: (646) 688-3525
Fax: (810) 885-4264
manmeet.singh@unitedsikhs.org

*Attorneys for Plaintiff Harmandeep Singh Grover*

## Verification of Complaint

I, Harmandeep Grover, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Signature: _____

Harmandeep Grover

Signed on May 6, 2015